UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REUVEN LYAK,<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF HACKENSACK; RAYMOND GUIDETTI, individually and in his official capacity; BENNY MARINO, individually and in his official capacity; XYZ CORP., INC.; JOHN DOES (1-10); and JANE DOES (1-10),<br><br>   Defendants. | Civ. No. 2:23-cv-13104 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

  Plaintiff Reuven Lyak ("Plaintiff") sues the City of Hackensack (the "City"), Raymond Guidetti ("Guidetti"), and Benny Marino ("Marino") (collectively "Defendants") for deprivation of his constitutional rights to free speech and freedom of association under 42 U.S.C. § 1983 *et seq.* (Count I) and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 *et seq.* ("NJCRA") (Count II). Plaintiff also asserts violations of his First and Fourteenth Amendments rights under 42 U.S.C. § 1985 *et seq.* (Count III). Before the Court is Defendants' unopposed motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 10. For the reasons set forth below, Defendants' motion is **GRANTED**.

### I.   FACTS[1] AND PROCEDURAL HISTORY

  Plaintiff has been a Hackensack Police Officer since 2013 and Vice President of PBA Local 9 since 2019. Compl. ¶¶ 19, 24, 33, ECF No. 1. Between 2014 and 2021, Plaintiff has held five (5) separate assignments during his employment with the City. *Id.* ¶¶ 26-35. According to Plaintiff, it was well known within the Hackensack Police Department ("Department") that he was a close associate of Hackensack Police Department Lt. Anthony DiPersia ("DiPersia"). *Id.* at ¶¶ 39-41. DiPersia, who is also the President of the Supervisory Officers' Association, PBA Local 9A, advocated for shift schedules to allow officers to perform extra duty traffic details, which Plaintiff was a proponent of and outwardly supported. *Id.* at ¶¶ 44-46.

  Defendant Guidetti was hired on August 15, 2022 as the Hackensack Police Director. *Id.* at ¶¶ 21, 37-38. Defendant Lt. Marino is Guidetti's Administrative Aide. *Id.* ¶ 22. Since the start of his employment, Guidetti sought to modify the extra duty policy in the Department. *Id.* at ¶ 42. Almost immediately, Guidetti and DiPersia clashed regarding extra duty details. *Id.* ¶¶ 42-46. By

---

[1] These allegations are taken from Plaintiff's Complaint and are taken as true for purposes of this motion.

September 1, 2022, DiPersia had repeatedly accused Guidetti of "unlawful conduct and acting beyond the legal scope of his employment." *Id.* at ¶ 43.

In September 2022, Plaintiff worked the day shift at the Bureau of Criminal Identification as the Firearms/Licensing Officer. *Id.* at ¶¶ 35, 50. On October 5, 2022, Plaintiff requested a schedule change to work Monday and Wednesday nights, from 4:00 pm to 12:00 am. *Id.* at ¶¶ 51-52. Instead, Guidetti authorized Plaintiff to work Monday and Wednesday evenings between 12:00 pm and 8:00 pm. *Id.* at ¶ 53. Pursuant to a new "Traffic Detail Policy," an officer's extra duty needed to be completed at least one hour prior to the start of the officer's shift. *Id.* at ¶ 56. Accordingly, Plaintiff worked extra duty details on Mondays and Wednesdays from either 7 or 8 am to 11 am and arranged for an outside entity, Jobs4Blue, to complete the remainder of the detail. *Id.* at ¶¶ 57-58. On October 26, 2022, Plaintiff requested relief from the extra duty policy, *id.* at ¶ 62, but the next day, the Commander of the Traffic Bureau advised the department that in order to split a shift on extra duty, the officer had to be able to work at least 50% of the detail. *Id.* at ¶ 60. Plaintiff alleges Guidetti's failure to grant his schedule change request and the subsequent policy change were intentional acts in retaliation for engaging in protected association and speech. *Id.* at ¶¶ 55, 61. In November 2022, DiPersia filed a suit against the City, Guidetti, and Captain Michael Antista for violations of the New Jersey Conscientious Employee Protection Act. *Id.* at ¶ 64.

Guidetti reassigned Plaintiff to the Detective Bureau in January 2023 after commenting to another officer that Plaintiff was spending a lot of time in the School Threat Assessment Bureau where DiPersia was the Commander. *Id.* at ¶¶ 66-67. Plaintiff maintains that this was intended to "create discord and animosity" between him and other members of the Department who were upset that they had applied to the Detective Bureau while Plaintiff had neither applied nor interviewed for that assignment. *Id.* at ¶¶ 68, 71, 72. On February 20, 2023, Plaintiff was reassigned to the Patrol Bureau, allegedly in retaliation for engaging in protected association and speech. *Id.* at ¶¶ 96-97.

On February 23, 2023, Plaintiff was "written up" in the Department's early warning system for violating the "Traffic Detail Policy" on October 26, 2022, but was not interviewed or given the opportunity to be heard regarding the incident. *Id.* at ¶¶ 98-102. Plaintiff complained to Defendant Marino about the disciplinary action and provided documentation that he had engaged Jobs4Blue to relieve him at least one hour prior to the start of his shift. *Id.* at ¶¶ 103-04. Marino did not respond and failed to investigate. *Id.* at ¶¶ 105-107.

Plaintiff emailed the "entire union membership" on February 24, 2023 asserting that select members of the union were being singled out. *Id.* at ¶ 109. Thereafter, the union president advised Plaintiff that the "Police Administrator" threatened to investigate "theft" of hours worked on details if the union chose to move forward with the claim, which Plaintiff claims was retaliatory. *Id.* at ¶¶ 111-12. Finally, Plaintiff alleges that at a May 2023 PBA meeting, Guidetti's "ally" called him "rat," "piece of shit," and had to be physically restrained from assaulting Plaintiff. *Id.* at ¶ 113.

Plaintiff filed suit on August 30, 2023. Defendants' motion to dismiss was initially returnable on March 18, 2024, but was adjourned at Plaintiff's request. ECF No. 12. Under the new motion return date of April 1, 2024, any opposition was due by March 18, 2024. To date, Plaintiff has not filed any opposition to Defendants' motion to dismiss.

## II. LEGAL STANDARD

A complaint survives a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the plaintiff states a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). But courts do not accept "legal conclusions" as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). When, as here, a defendant's Rule 12(b)(6) motion is uncontested, granting the motion "solely because it has not been opposed is not simply dismissing the complaint for failure to state a claim upon which relief may be granted, but rather, is "a sanction for failure to comply with the local." *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991). Thus, the Court may grant the unopposed motion after analyzing it on the merits. *See id.*

## III. ANALYSIS

### A. *§ 1983 and NJCRA First Amendment Retaliation Claims*

Plaintiff alleges Defendants retaliated against him for closely associating with and openly supporting DePersia regarding extra duty details. Section 1983[2] and the NJCRA[3] provide a cause of action for violation of constitutional rights by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To prove a First Amendment retaliation claim under §1983, a plaintiff must establish that: "(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.' *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citing *Palardy v. Twnship of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018)); *Williams v. City of Allentown*, 804 F. App'x 164, 167 (3d Cir. 2020) (noting § 1983 First Amendment retaliation claim asserting violation of right to freedom of association similarly requires a showing that government officials 'were engaged in constitutionally protected conduct and that the conduct was a substantial or motivating factor in the government employer's decision.'" (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1200 (3d Cir. 1988)). The first element of the analysis is a question of law; "the remaining steps present questions for the fact finder." *Baloga*, 927 F.3d at 752, n.7.

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government

---

[2] Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... [causes] deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

[3] "The Free Speech Clause contained within the New Jersey Constitution 'is generally interpreted as co-extensive with the First Amendment,' so the analysis of [plaintiff's] state free speech claim is identical to its federal counterpart." *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80 (3d Cir. 2018) (citing *Twp. of Pennsauken v. Schad*, 160 N.J. 156, 733 A.2d 1159, 1169 (1999)).

3

employer did not have an adequate justification for treating the employee differently from any other member of the public as a result of the statement he made." *Gorum v. Sessmons*, 561 F.3d 179, 185 (3d Cir. 2009) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Since Plaintiff's freedom of speech claims are linked closely with his freedom of association, both retaliation claims are subject to the *Garcetti* test. *Williams*, 804 F. App'x at 168 (citing *Gorum*, 561 F.3d at 185 n.4 and *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992) (applying same test when employee's freedom of association claim "implicate[s] associational rights in essentially the same way and to the same degree" as his free speech claim)).

As to the first *Garcetti* factor, public employees do not speak as citizens when the speech is made pursuant to their professional duties. *Garcetti*, 547 U.S. at 421. The Constitution does not insulate their communications from employer discipline and "empower such employees to 'constitutionalize the employee grievance.'" *Myers v. Cnty. of Somerset*, 515 F. Supp.2d 492, 500 (D.N.J. 2007), *aff'd*, 293 F. App'x 915 (3d Cir. 2008) (citing *Garcetti*, 547 U.S. at 420). Here, Plaintiff's support of DiPersia and advocacy regarding shift schedules, request for a schedule change, and complaint to Marino about his disciplinary action were employee grievances related to Plaintiff's professional duties rather than those as a citizen. Plaintiff had the opportunity to engage in such activities in his role as a police officer. *See De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) ("an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee"). A citizen would not have advocated on police extra duty policy, objected to changes on such policy, or complained about being written up for violating police policy. *See e.g., Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 244 (3d Cir. 2016) (finding plaintiff-officers were not speaking as citizens but pursuant to their public employee professional responsibilities when they objected to certain police policy on counseling forms because "[c]itizens do not complete internal police counseling forms.").

Moreover, Plaintiff's speech and association do not involve matters of public concern. *See Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 169-70 (3d Cir. 2008) ("The content of speech on a matter of public concern generally addresses a social or political concern of the community," *e.g.* "the discharge of public responsibilities by an important government office, agency, or institution," … "the pressure to work on political campaigns, the allocation of funds to certain school programs, government corruption, and the lowering of academic standards and its effects," … "'bring[ing] to light actual or potential wrongdoing or breach of public trust' on the part of government officials," … "the way in which a government office [i]s serving the public." (internal quotations and citations omitted.)).

Even if Plaintiff's email to the union that select members were being singled out was a matter of public concern, Plaintiff has not pled facts that show that that resulted in an adverse employment action. *See Pierce v. Texas Dept. of Criminal Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). The "threat" of investigation, apart from being double hearsay, was made by an unnamed "Police Administrator." Likewise, the conduct of Guidetti's unidentified ally cannot be attributed to any of the Defendants and is not an adverse employment decision. Additionally, beyond conclusory assertions, the Complaint contains no allegations as to what effect Plaintiff's reassignments or disciplinary write up had on the terms and conditions of his employment. Thus, Plaintiff does not plausibly state a First Amendment retaliation claim.

4

### B. Due Process Claim

"[P]rocedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (Due "process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). "The existence of a property interest is largely dependent upon state law." *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 555 (D.N.J. 2000) (citing *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir.1993)). "To rise to the level of a cognizable property interest, the state statute must give the recipient 'a legitimate claim of entitlement to [the benefit]." *Id.* (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). *See e.g., Suppan v. City of Allentown*, No. 97-2102, 1997 WL 476359, at *4 (E.D. Pa. Aug. 20, 1997), *amended*, No. 97-2102, 1997 WL 798257 (E.D. Pa. Dec. 10, 1997) ("An employment action implicates a Fourteenth Amendment liberty interests only if it is based on a charge that might seriously damage an individual's standing in the community, or if it imposes a stigma on the individual which forecloses his freedom to take advantage of other employment opportunities."). As Plaintiff has not alleged what protected property or liberty interest he lost from the "write up," his claim for violation of due process fails as a matter of law.

### C. § 1985

Plaintiff claims that Defendants conspired to deprive him of his First and Fourteenth Amendments rights in violation of § 1985(3). A claim under 42 U.S.C. § 1985(3) requires a plaintiff to allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006)); *New Jersey Chinese Cmty. Ctr. v. McAleer*, No. 21-08320, 2022 WL 1553334, at *5 (D.N.J. May 17, 2022) (noting § 1985 applies to "civil rights conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." (citing *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 826 (1983)). Plaintiff has not alleged that Defendant engaged in invidious discriminatory animus against an identifiable class or set forth any facts that support such a claim. Accepting as true Plaintiff's allegations as true, Plaintiff does not state a claim for relief under § 1985(3).

## IV.   CONCLUSION

For the reasons stated above, Defendant's unopposed motion to dismiss, ECF No. 10, is **GRANTED** and the Complaint is **DISMISSED**.[4] An appropriate Order accompanies this Opinion.

WILLIAM J. MARTINI, U.S.D.J.

Date: May 15, 2024

---

[4] Thus, the Court need not address Defendants' claim of qualified immunity.

5