# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REUVEN LYAK, | Civ. No. 2:23-cv-13104 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| CITY OF HACKENSACK; RAYMOND GUIDETTI, individually and in his official capacity; BENNY MARINO, individually and in his official capacity; XYZ CORP., INC.; JOHN DOES (1-10); and JANE DOES (1-10), | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.**

This is a civil rights action by Plaintiff Reuven Lyak ("Plaintiff") against the City of Hackensack (the "City"), Raymond Guidetti ("Guidetti"), and Benny Marino ("Marino") (collectively "Defendants") that was dismissed without prejudice on May 15, 2024. ECF Nos. 13, 14. Before the Court is Plaintiff's motion to reopen this matter pursuant to Fed. R. Civ. P. 60(b) and for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15. ECF No. 17. For the reasons set forth below, Plaintiff's motion to reopen and to amend is **DENIED.**

## I.  FACTS[1] AND PROCEDURAL HISTORY

Plaintiff is a Hackensack Police Officer and Vice President ("VP") of PBA Local 9 since 2019, *see* proposed Amended Compl. ("PAC") ¶¶ 19, 24, 33, ECF No. 1. Guidetti is the Hackensack Police Director and Lt. Marino is Guidetti's Administrative Aide. *Id.* at ¶¶ 21, 22, 37-38. Between 2014 and 2021, Plaintiff held five (5) separate assignments during his employment with the City. *Id.* ¶¶ 26-35. According to Plaintiff, it was well known within the Hackensack Police Department ("HPD") that he was a close associate of Lt. Anthony DiPersia ("DiPersia"). *Id.* at ¶¶ 39-41. DiPersia, who is also the President of the Supervisory Officers' Association, PBA Local 9A, advocated for shift schedules to allow officers to perform extra duty traffic details, which Plaintiff was a proponent of and outwardly supported. *Id.* at ¶¶ 46-47.

In 2022, an audit of the HPD showed that many of the City's highest-ranking and highest-paid officers received additional pay of tens of thousands of dollars by manipulating schedules and working "extra duty details," such as providing traffic control at construction sites. *Id.* at ¶ 42. For example, officers would start their usual shift, then accept extra duty detail in the middle of the workday, then return to finish their regular shift allowing officers to be paid twice for the same

---

[1] The allegations in the original Complaint are fully set forth in the Court's May 15, 2024 Opinion. ECF No. 13.

hours worked. *Id.* at ¶ 43. The audit also revealed that the number of arrests dropped by 85% while overtime costs increased by 115%. *Id.* The results of the audit were published in local newspapers. *Id.* at ¶ 44.

Defendant Guidetti was hired on August 15, 2022 as the Hackensack Police Director. *Id.* at ¶¶ 21, 37-38. Defendant Lt. Marino is Guidetti's Administrative Aide. *Id.* ¶ 22. Since the start of his employment and prompted by the "scathing" audit, Guidetti sought to modify the extra duty policy in the Department. *Id.* at ¶ 44; Pl. Mot. Br. at 1. Almost immediately, Guidetti and DiPersia clashed regarding extra duty details and by September 1, 2022, DiPersia had repeatedly accused Guidetti of "unlawful conduct and acting beyond the legal scope of his employment." *Id.* ¶¶ 45. Plaintiff, while on and off-duty as well as in his capacity as VP of PBA Local 9, repeatedly argued to members of both Local 9 and Local 9A, their family members, other City residents, and to a Captain Antista, that he believed Guidetti's proposed changes to the extra duty policy were unfairly applied between Bureaus and would be detrimental to public safety, result in a reduced number of police officers performing traffic details and to greater difficulty with hiring and retention of qualified officers. *Id.* at ¶¶ 47, 48, 100. Eventually, Local 9 and PBA Local 9A issued a vote of "no confidence" against Guidetti. *Id.* at ¶¶ 46, 47.

In September 2022, Plaintiff worked the day shift at the Bureau of Criminal Identification as the Firearms/Licensing Officer. *Id.* at ¶¶ 35, 52. On October 5, 2022, Plaintiff requested a schedule change to work Monday and Wednesday nights, from 4:00 pm to 12:00 am. *Id.* at ¶¶ 53-54. Instead, Guidetti authorized Plaintiff to work Monday and Wednesday evenings between 12:00 pm and 8:00 pm. *Id.* at ¶ 55. Shortly thereafter, Guidetti amended the "Traffic Detail Policy" to require that an officer's extra duty needed to be completed at least one hour prior to the start of the officer's shift. *Id.* at ¶ 59. Accordingly, Plaintiff worked extra duty details on Mondays and Wednesdays from either 7 or 8 am to 11 am and arranged for an outside entity, Jobs4Blue, to complete the remainder of the detail. *Id.* at ¶¶ 60-61. Plaintiff complained about being forced to arrange for relief through Jobs4Blue and disagreed with Guidetti's policy. *Id.* at ¶ 61. On October 26, 2022, Plaintiff requested relief from the extra duty policy, *id.* at ¶ 65, but the next day, the Commander of the Traffic Bureau advised the department that in order to split a shift on extra duty, the officer had to be able to work at least 50% of the detail. *Id.* at ¶¶ 63, 66. Plaintiff alleges Guidetti's failure to grant his schedule change request and the subsequent policy change were intentional acts in retaliation for engaging in protected association and speech and "furthered a pattern of corruption" that included targeting Plaintiff and all of DiPersia's allies in Local 9A and Local 9. *Id.* at ¶¶ 57, 66.

Guidetti reassigned Plaintiff to the Detective Bureau in January 2023 after commenting to another officer that Plaintiff was spending a lot of time in the School Threat Assessment Bureau where DiPersia was the Commander. *Id.* at ¶¶ 69-70. Plaintiff maintains that transfer to the Detective Bureau, despite seemingly "prestigious and a promotion," was instead a "clear demotion," intended to "create discord and animosity" between him and other members of the Department, including members of PBA Local 9, who were upset that they had applied to the Detective Bureau while Plaintiff had neither applied nor interviewed for that assignment. *Id.* at ¶¶ 71, 74, 75, 76. On February 17, 2023, Plaintiff and other officers questioned why officers in the Traffic Bureau were allowed to switch their schedules to work overtime while other divisions were not allowed. *Id.* at ¶¶ 81-95. On February 20, 2023, Plaintiff was reassigned to the Patrol Bureau,

which he claims is a "far lower position than one in Detectives or Narcotics" in retaliation for engaging in protected association and speech. *Id.* at ¶¶ 99-100.

On February 23, 2023,[2] Plaintiff was "written up" in the Department's early warning system for violating the "Traffic Detail Policy" on October 26, 2022, but was not interviewed or given the opportunity to be heard regarding the incident. *Id.* at ¶¶ 101-05. Plaintiff complained to Marino that the disciplinary action would prevent him from receiving commendations, awards, and affect his compensation. *Id.* at ¶ 106. Plaintiff showed Marino documentation that he had complied with Guidetti's extra duty policy by engaging Jobs4Blue to relieve him at least one hour prior to the start of his shift. *Id.* at ¶¶ 106-07, 111. Marino did not respond and failed to investigate. *Id.* at ¶¶ 108-10.

Plaintiff emailed the "entire union membership" on February 24, 2023 asserting that select members of the union were being singled out. *Id.* at ¶ 112. Thereafter, the Local 9 president advised Plaintiff that he received a call from Marino threatening that if the union chose to move forward with the claim, Defendants would start to investigate "theft" of hours worked on details. *Id.* at ¶¶ 113. Finally, Plaintiff alleges that at a May 2023 PBA meeting, Guidetti's "ally" called him "rat," "piece of shit," and had to be physically restrained from assaulting Plaintiff. *Id.* at ¶ 115.

Plaintiff commenced suit on August 30, 2023. ECF No. 1. Defendants filed a motion to dismiss on February 15, 2024. ECF No. 10. Although Plaintiff requested and received an adjournment of the return date, ECF No. 12, Plaintiff nonetheless failed to file any opposition or request leave to amend the complaint. On May 15, 2024, the Court issued an Opinion and Order granting Defendants' motion to dismiss and dismissing the Complaint without prejudice. ECF No. 14. The following day, Plaintiff filed an amended complaint, ECF No. 15, in the already closed matter. On November 21, 2024, Plaintiff moved to reopen and to file an amended complaint. ECF No. 17. That application is presently before the Court. The PAC includes the initial claims against all Defendants for deprivation of constitutional rights to free speech and freedom of association under 42 U.S.C. § 1983 *et seq.* (Count I) and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1 *et seq.* ("NJCRA") (Count III), conspiracy to deprive Plaintiff of rights under the First and Fourteenth Amendments in violation of 42 U.S.C. § 1985 *et seq.* (Count IV), and an added claim for violation of due process under the Fourteenth Amendment by depriving him of a liberty or property interest in his employment with the City and his reputation as a police officer and VP of PBA Local 9 (Count II).

## II.    DISCUSSION

### A.  Fed. R. Civ. P. Rule 60(b) – Motion to Reopen

Rule 60(b) allows a party to seek relief from a final judgment in a limited set of circumstances, including mistake, excusable neglect, newly discovered evidence, fraud or other reason justifying relief. Fed. R. Civ. P. 60(b). Rule 60(b) applies only to "final" judgments and orders. *Penn West Assoc., Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (citing *Torres v. Chater*, 125 F.3d 166, 168 (3d Cir. 1997)). "'[A]n order dismissing a complaint without prejudice is not a

---

[2] The PAC states that the write up occurred on or about February 23, 2022, but the Court assumes 2022 is in error given that the write up stemmed from an incident on October 26, 2022. *See* PAC ¶ 101.

final order as long as the plaintiff may cure the deficiency and refile the complaint[.]'" *Atkinson v. Middlesex Cnty.,* 610 F. App'x 109, 111 (3d Cir. 2015) (citing *Ahmed v. Dragovich,* 297 F.3d 201, 207 (3d Cir. 2002). *See e.g., Core Commc'ns, Inc. v. Verizon Pa., Inc.,* 493 F.3d 333, 337 (3d Cir. 2007) ("Ordinarily, an order dismissing a complaint without prejudice is not a final order unless the applicable statute of limitations would not permit the re-filing of the claims."). The Court's May 15, 2024 dismissal of the Complaint was not a final judgment as it was without prejudice.

However, even if Rule 60(b) applies because Plaintiff cannot refile his claims and relief from judgment is warranted under subsection (1) due to "mistake, inadvertence, surprise, or excusable neglect;" or under subsection (6) for "any other reason justifying relief from operation of the judgment," Plaintiff's request to reopen must be denied on the grounds of futility. "When a party requests post-judgment amendment of a pleading, a court will normally conjoin the Rule 60(b) and Rule 15(a) motions to decide them simultaneously, as it 'would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend.'" *Ahmed v. Dragovich,* 297 U.S. 201, 209 (3d Cir. 2002) (citing 6 Wright et al., Federal Practice & Procedure § 1489, at 695). Hence "'the fact that the amended pleading offered by the movant will not cure the defects in the original pleading that resulted in the judgment of dismissal may be a valid reason both for denying a motion to amend under Rule 15(a) and for refusing to reopen the judgment under Rule 60(b).'" *Id.* (citing 6 Wright et al., Federal Practice & Procedure § 1489, at 695)). For the reasons discussed below, the claims alleged in the PAC are not curative of the pleading deficiencies. Thus, Plaintiff's motion to reopen is **denied**.

## B. Fed. R. Civ. P. Rule 15(a) – Motion to Amend

When presented with a motion to amend the complaint after a responsive pleading has been served, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave is in the court's discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1970).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1332 (3d Cir. 2002). The proposed amended claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The proposed amendment is futile if is "frivolous or advance[s] a claim or defense that is legally insufficient on its face...." *Rx ReLeaf LLC v. Relief TMS LLC,* No. 23-3551, 2024 WL 4894768, at *6 (D.N.J. Nov. 26, 2024) (citing *Marlowe Patent Holdings LLC v. Dice Electronics, LLC,* 293 F.R.D. 688, 695 (D.N.J. 2013)).

### 1. § 1983 and NJCRA First Amendment Retaliation Claims

"To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in

retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 863–64 (3d Cir. 2019), *aff'd sub nom. Davis v. Luzerne Cnty.*, No. 22-2519, 2023 WL 5842299 (3d Cir. Sept. 11, 2023) (citing *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)). In order for speech "to rise to the level of constitutionally protected expression, the employee must speak as a citizen (and not as an employee), 'the speech must involve a matter of public concern,' and 'the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the *Pickering* [*v. Board of Education*, 391 U.S. 563 (1968)] balancing test.'" *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015), *as amended* (Oct. 25, 2019) (citing *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 987 (3d Cir. 2014)). "The *Pickering* balancing test requires the courts to 'balance ... the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (*Dougherty,* 772 F.3d at 987).

To start, Plaintiff's complaints that he did not receive his requested schedule, that he had to use Jobs4Blue to comply with extra duty policy, that Traffic Bureau officers were allowed to switch their schedules, and that he was written up in the early warning system are employee grievances about the conditions of employment rather than constitutionally protected speech. *See Palardy v. Twp. of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018) (internal citation omitted) ("'Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest ... are matters more immediately concerned with the self-interest of the speaker as employee.'" (citation omitted)). Even assuming Plaintiff's other speech about the extra duty policy's detrimental effects (decreased public safety, reduced number of officers) was spoken as a citizen over a matter of public concern (the audit results were published), Plaintiff has not plead facts to demonstrate that Defendants engaged in retaliatory action and that it was causally related to constitutionally protected conduct. For instance, it is not reasonable to infer that policy changes that did not only apply to Plaintiff, were retaliatory actions against Plaintiff rather than changes meant to address the manipulation and waste of taxpayer funds revealed by the audit. Moreover, accepting as true that the reassignments were to lower positions, the conduct preceding the reassignments - Guidetti's comment that Plaintiff was spending a lot of time in the bureau where DiPersia was the Commander and complaints about the Traffic Bureau being allowed to switch schedules - are insufficient grounds to infer that the reassignments were retaliatory or that there was the necessary causal link. Lastly, neither being called names by someone at a PBA meeting nor investigative threats to the union are employment decisions that adversely affected Plaintiff's exercise of constitutional rights. *See* May 15, 2024 Op. at 4; *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) ("'courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.'" (citation omitted)). The PAC's claim for retaliation under the First Amendment is legally insufficient on its face.

### 2. Due Process

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the

Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiff raises procedural due process claims based on deprivation of a liberty or property interest in his employment with the City and his reputation as a police officer and Vice President of PBA Local 9. PAC ¶ 133. He maintains that Defendants damaged his future career prospects by stigmatizing him as a union leader who dissented to Guidetti's extra duty policy changes and as a perceived ally of Lt. DePersia. *Id.* at ¶¶ 132-137.

### a.  Property Interest

Plaintiff maintains that he was deprived of a property interest in his job by being repeatedly reassigned and demoted and subjected to disciplinary action. "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question answered by state law." *Hill*, 455 F.3d at 234 (citing *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)). Plaintiff has a protected property interest in being a police officer under N.J. Stat. Ann. § 40A:14-147.[3] *See Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997); *see e.g., Versaggi v. Twp. of Gloucester*, No. 05-2093, 2005 WL 8175866, at *3–4 (D.N.J. Nov. 28, 2005). Other than broad assertions of loss and that being written up on the early warning system "would prevent Plaintiff from receiving commendations, awards, and affect his compensation," the PAC does not allege that Plaintiff was suspended, terminated, or received a reduction in rank or pay as a result of the alleged retaliatory conduct. *Kelly*, 107 F.3d at 1077 (finding no loss of property interest in employment where officer was not "suspended, removed, fined, [] reduced" in rank, or or received less pay"); *Bianchi v. Rutgers, the State Univ. of New Jersey*, No. 14-131, 2016 WL 430597, at *6 (D.N.J. Feb. 3, 2016) (concluding that written warning is not "sufficient deprivation of a property interest to trigger the protections of the due process clause."). He does, however, assert that his transfer to the Detective Bureau, despite seeming to be "prestigious and a promotion," was a "clear demotion," PAC ¶ 76, and that he was reassigned to the Patrol Bureau, an allegedly "far lower position than one in Detectives or Narcotics," *id.* at ¶ 99. Assuming that these reassignments are in fact demotions that constitute deprivation of a property interest, Plaintiff still has not pled that he availed himself of any procedural protections or that there were no such processes available to him to oppose reassignment. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. '[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.'" (citing *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982)). Plaintiff's proposed claim for deprivation of a property interest is deficient.

---

[3] N.J.S.A. 40A:14-147 states: "Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer."

b.  Liberty Interest

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (citing cases). This is referred to as the "stigma-plus" test:

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing. [footnote omitted]. To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s)(1) were made publicly, *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Chabal v. Reagan,* 841 F.2d 1216, 1223–1224 (3d Cir.1988); *Anderson v. City of Philadelphia,* 845 F.2d 1216, 1222 (3d Cir.1988), and (2) were false. *Codd,* 429 U.S. at 627–629, 97 S.Ct. 882; *Fraternal Order of Police v. Tucker,* 868 F.2d 74, 82–83 (3d Cir.1989).

*Id.* Here, Plaintiff has not alleged that the purportedly stigmatizing statements were made publicly and thus, cannot satisfy the "stigma-plus" test.

### 3. § 1985 Conspiracy

Plaintiff's PAC pleads no additional facts to show that any alleged conspiracy was "motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131,135 (3d Cir. 2006). Because the PAC does not cure the deficiencies noted in the Court's May 15, 2024 Opinion, permitting Plaintiff to file the amended pleading would be futile.

### 4. *Qualified Immunity*

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law," *Pearson v. Callahan*, 555 U.S. 223, 244 (2009), and encompasses mistaken judgments that are not plainly incompetent. *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). "The qualified immunity inquiry contains two prongs; (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)). An answer in the negative to either prong entitles an officer to qualified immunity. *See Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010). Qualified immunity under § 1983 and the NJCRA share the same standards. *See Faragalla v. Jersey City*, No. 17-03604, 2020 WL 5812798, at *12 (D.N.J. Sept. 30, 2020); *see also Brown v. State*, 230 N.J. 84 (N.J. 2017); *Morillo v. Torres*, 222 N.J. 104 (N.J. 2015). As set forth above, the facts alleged by Plaintiff in the PAC do not show the

violation of a constitutional right. The officers Defendants are entitled to qualified immunity on the § 1983 and NJCRA claims in the PAC.

### III.    CONCLUSION

For the reasons stated above, Plaintiff's motion to reopen and to amend the pleadings is **denied**. An appropriate Order accompanies this Opinion.

WILLIAM J. MARTINI, U.S.D.J.

Date:  March ___5___ , 2025